UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ALLEN TAYLOR | CIVIL ACTION |
|---|---|
| VERSUS | NO. 18-8941 |
| B&J MARTIN, INC., ET AL. | SECTION "A" (1) |

ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment (Rec. Doc. 54)** filed by the Defendant B&J Martin, Inc. ("B&J Martin"). B&J Martin seeks to dismiss the Plaintiff Allen Taylor's claims for maintenance and cure and punitive damages on the following grounds: (1) Taylor has reached maximum medical improvement ("MMI") and (2) Taylor willfully concealed and/or misrepresented preexisting injuries to his back on his pre-employment medical history questionnaires. (Rec. Doc. 54-1, p. 1, B&J Martin's Memorandum in Support). Taylor opposes the motion (Rec. Doc. 59), and B&J Martin has replied. (Rec. Doc. 62). The motion, submitted for consideration on August 21, 2019, is before the Court on the briefs without oral argument.

I.  Background

  A.  **General Facts and Procedural History**

In June of 2009, B&J Martin employed Taylor as a seaman as part of a work release program. (Rec. Doc. 54-1, p. 2, B&J Martin's Memorandum in Support). Upon that program's completion, B&J Martin later rehired Taylor in July of 2011. *Id*. Taylor remained employed by B&J Martin up until the day that the alleged incident occurred. *Id*. Before beginning employment on either occasion, B&J Martin required Taylor to fill out and complete a medical information questionnaire supplied by B&J Martin. *Id.*; (Rec. Doc. 54-1, B&J Martin's

Memorandum in Support). Although Taylor fully completed B&J Martin's 2009 questionnaire, he only partially filled out B&J Martin's 2011 questionnaire. (Rec. Doc. 54-2, B&J Martin's 2009 Questionnaire); (Rec. Doc. 54-3, B&J Martin's 2011 Questionnaire).

While working aboard the F/V DUSTY DAWN on October 14, 2015, Taylor was descending a flight of stairs one morning when he stepped on a cigarette lighter which caused him to slip and fall to the vessel's deck. (Rec. Doc. 1, ¶ 5-6, Plaintiff's Complaint). This fall allegedly caused lumbar spine damage, specifically to his L5-S1 disc, which required three successive surgeries to correct. (Rec. Doc. 54-1, p. 6-8, B&J Martin's Memorandum in Support). However, B&J Martin now moves this Court to grant partial summary judgment finding that: (1) Taylor has reached MMI, (2) Taylor is not entitled to any maintenance and cure damages because of B&J Martin's valid *McCorpen* defense, and (3) Taylor cannot claim punitive damages because B&J Martin dutifully fulfilled its maintenance and cure obligations to date. *Id*. at 1.

### B. Medical Testing, Diagnosis, and Treatment

A week after the fall occurred, Taylor went to Dr. Ralph Katz who recommended an MRI on Taylor's lumbar spine and prescribed pain medication. *Id*. at 6. After reviewing the MRI results, Dr. Katz administered an epidural steroid injection on November 10, 2015. *Id*. However, Taylor still complained of back pain, so Dr. Katz performed a microscopic laminectomy discectomy right L5-S1 surgery on September 6, 2016. (Rec. Doc. 54-11, p. 2, Dr. Katz's Operative Note).

Unfortunately, Taylor failed to receive any relief from this first surgery, so he decided to visit a second doctor, Dr. Manish Singh. (Rec. Doc. 54-11, p. 1, Dr. Singh Operative Note). Dr.

Singh then recommended that Taylor undergo a second surgery which occurred on September 6, 2016. *Id*. This consisted of a re-exploration of the previous LS-Sl discectomy with right-sided LS laminotomy and microdiscectomy of the recurrent disc herniation. *Id*.

After failing to find relief from either of the two previous surgeries, Taylor next visited Dr. David Ferachi on August 15, 2017. (Rec. Doc. 54-12, p. 16, Dr. Ferachi Procedure Report). Dr. Ferachi diagnosed him with lumbar degenerative disc disease, spondylosis, and lumbar radiculopathy. *Id*. at 13. Dr. Ferachi subsequently performed a one-level lumbar fusion on November 10, 2017. *Id*. at p. 49. But, like the previous surgeries, this third procedure failed to provide Taylor with any permanent relief from his pain. *Id*. Dr. Ferachi even informed Taylor at a subsequent follow-up appointment that he had no further treatment options to offer and placed Taylor at MMI on March 19, 2019. (Rec. Doc. 54-13, p. 4, Dr. Ferachi's Note). In the hope of finding some type of enduring solution, Taylor then visited Dr. Andrew Todd on April 29, 2019 for a second opinion. (Rec. Doc. 54-14, p. 2, Dr. Todd's Report). Dr. Todd reviewed Taylor's MRI and, on May 20, 2019, determined that:

> I see nothing to address, from a spine surgery point of view. He has attempted a spinal cord stimulator and unfortunately he has not gained relief from that. The only other modality that I believe could be helpful for him would be to consider an intrathecal pump and that is something he can certainly discuss with his pain management physician in Georgia. Unfortunately, I have nothing to offer him from a surgical point of view and this is something he will have to continue to pursue via pain management. (Rec. Doc. 54-15, Dr. Todd's Note)

Thus, as a result of Dr. Ferachi and Dr. Todd's statements, B&J Martin stopped making maintenance and cure payments to Taylor on May 23, 2019.[1] (Rec. Doc. 54-8, April Foret's

---

[1] More specifically, Defendant notes that it stopped making these maintenance and cure payments only after "two treating orthopaedic [sic] surgeons opined that Taylor reached maximum care." (Rec. Doc. 54-8, April Foret's Declaration).

Declaration). Before that day, B&J Martin paid for all of Taylor's maintenance and cure expenses which included three surgeries, pain management, physical therapy, and other medical expenses starting since October 14, 2015. *Id*.

## II. Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*. (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id*. (citing *Anderson*, 477 U.S. at 255).

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id*. (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusionary allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id*. (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### III. Discussion

#### A. Whether Taylor has Reached Maximum Medical Improvement

When a seaman becomes ill or injured while in the service of his ship, the shipowner must pay him maintenance and cure, regardless of whether the shipowner was at fault or whether the ship was unseaworthy. *Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir.1995). "Maintenance" is defined as the seaman's right to food and lodging if he falls ill or becomes injured while in the service of the vessel, whereas "cure" is the seaman's right to necessary medical services. *Id*.

It is well-settled that a determination to terminate a seaman's right to maintenance and cure must be unequivocal; payments may be terminated only when it is determined that the seaman has reached MMI. *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir.1990). "The cut-off date for both maintenance and cure is not the point at which the seaman recovers sufficiently to return to work." *Springborn v. Am. Commercial Barge Lines, Inc.*, 767 F.2d 89 (5th Cir.1985). Rather, the point of MMI has been determined to be when "it appears probable that further medical treatment will result in no betterment of the seaman's condition." *Gaspard v. Taylor Diving & Salvage Co., Inc.*, 649 F.2d 372, 374 n.3 (5th Cir.1981). "Thus, where it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering but not otherwise improve the seaman's condition, it is proper to declare that the point of maximum care has been achieved." *Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979). In other words, a procedure is deemed to better a seaman's condition when it is designed to cure the pain's root cause. *See Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 476 (5th Cir. 2015). Conversely, a procedure is deemed as merely palliative when it is designed to correct

a symptom (i.e., the pain) of the condition. *See id.* Lastly, any ambiguities or doubts in the application of maintenance and cure are to be resolved in the seaman's favor. *Liner v. J.B. Talley & Co.*, 618 F.2d 327, 332 (5th Cir. 1980).

Here, the Court finds that MMI occurred on May 20, 2019. The Court finds this day sufficient because it is after March 19, 2019 when Dr. Ferachi unequivocally found that Taylor had reached MMI, (Rec. Doc. 54-14, p. 4, Dr. Ferachi's Note), and it is the day that Dr. Todd told Taylor that there was nothing he could do from a surgical point of view to help Taylor. (Rec. Doc. 54-15, Dr. Todd's Note).

The Court is unpersuaded by Taylor's argument that Dr. Todd's recommendation was calculated to improve Taylor's condition instead of merely being palliative in nature.[2] (Rec. Doc. 59, p. 2, Plaintiff's Opposition). On the contrary, a plain reading of Dr. Todd's note illustrates that he believes that nothing can be done to improve Taylor's condition, besides pain management procedures. (Rec. Doc. 54-15, Dr. Todd's Note). Further, following the distinction outlined in *Barto*, because an intrathecal pump is designed to administer pain medicine and not cure the root cause of a patient's pain, this type of procedure cannot be classified as creating a "betterment" in Taylor's condition under *Barto*. *Id.*; 801 F.3d at 476. Thus, because there is no genuine issue of material fact concerning MMI, the Court finds that Taylor reached MMI on May 20, 2019.

---

[2] In Taylor's Opposition, the Plaintiff argued that, "the courts have held that treatment is curative even if the increased function is primarily through pain relief." (Rec. Doc. 59, p. 3, Plaintiff's Opposition). However, the Court finds that Plaintiff has failed to present any evidence to show that the implementation of an intrathecal pump will improve Taylor's condition, besides mere speculation. *Id.*

### B. Whether B&J Martin is Entitled to the *McCorpen* Defense

Maintenance and cure is a contractual form of compensation afforded by general maritime law to seamen who fall ill or are injured while in the service of a vessel. *McCorpen v. Cent. Gulf S. S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968). The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment. *Id*. A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel's owner at the time he was employed. *Id*.

A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987)). An employer is allowed to rely on certain legal defenses to deny these claims, such as the defense that the injured seaman willfully concealed a pre-existing medical condition from his employer. *Id*. (citing *McCorpen*, 396 F.2d 547 (5th Cir. 1968)). "[W]here the [employer] requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *Id*. at 173 (citing *McCorpen*, 396 F.2d at 549).

To prevail on the *McCorpen* defense, "an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the

withheld information and the injury complained of in the lawsuit." *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).

Here, the Court finds that B&J Martin cannot establish a successful *McCorpen* defense. Although Taylor intentionally concealed his medical history and a connection exists between that withheld history and his subsequent injury, an issue of material fact remains as to whether his non-disclosed medical history was material to B&J Martin's decision to hire Taylor. Thus, the Court will begin by analyzing the first and third *McCorpen* elements and then conclude by explaining why B&J Martin cannot satisfy the second element of the *McCorpen* defense on this motion for partial summary judgment.

### i. Concealment

In cases involving a pre-existing illness or other disability, the courts have made a distinction between nondisclosure and concealment. *McCorpen*, 396 F.2d at 548-49. On the one hand, when the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when, in his own opinion, the shipowner would consider it a matter of importance. *Id*. On the other hand, "when the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *Id*. Further, the Fifth Circuit has held that intentional concealment does not require a finding of subjective intent. *Brown*, 410 F.3d at 174. Rather, "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information . . . satisfies the 'intentional concealment' requirement." *Id*.

Here, B&J Martin required Taylor to submit to a pre-hiring medical interview in the form of a questionnaire. (Rec. Doc. 54-2, B&J Martin's 2009 Questionnaire); (Rec. Doc. 54-3, B&J Martin's 2011 Questionnaire). However, Taylor failed to disclose that he injured his back on two prior occasions. He originally herniated his L5-S1 disc in a Maritime accident in 1999, (Rec. Doc. 54-7, Taylor's Prior Medical History Report), and he also injured his back in a car crash in 2004. (Rec. Doc. 54-8, Taylor's 2004 State Court Petition). However, on both the 2009 questionnaire and the 2011 questionnaire, Taylor checked "No" to the question that asked, "have you ever sustained any type of disability, injury or disease?" (Rec. Doc. 54-2, B&J Martin's 2009 Questionnaire); (Rec. Doc. 54-3, B&J Martin's 2011 Questionnaire). Thus, the Court finds that these facts are enough to satisfy the concealment element of the *McCorpen* defense.

### ii. Causal Link

The third requirement of the *McCorpen* defense requires a defendant to show "a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Brown*, 410 F.3d at 176 (quoting *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 236 (D. Haw. 1990)). But the test applied is "not a causation analysis in the ordinary sense." *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 728 (E.D. La. 2009). Rather, "the *McCorpen* defense will succeed if the defendant can prove that the old injury and the new injury affected the same body part." *Id.* (citing *Brown*, 410 F.3d at 176); *see also Weatherford v. Nabors Offshore Corp.*, No. 03-478, 2004 WL 414948, at *7 (E.D. La. Mar. 3, 2004). Indeed, "there is no requirement that a present injury be identical to a previous injury." *Brown*, 410 F.3d at 176 (quoting *Quiming*, 773 F. Supp. at 236).

Here, Taylor's current and past injuries involve the same region of his back. For instance, medical records from the 1999 Maritime slip and fall incident conclusively establish that Taylor sustained injuries to his L5-S1 disc. (Rec. Doc. 54-7, Taylor's Prior Medical History Report). He then reinjured this same L5-S1 disc on October 14, 2015 while working for B&J Martin. (Rec. Doc. 54-10, p. 2, Dr. Katz's Visit Note). Thus, the Court finds that these facts are enough to satisfy the causal link element of the *McCorpen* defense.

### iii. Materiality

Finally, for the materiality element of the *McCorpen* defense, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Brown*, 410 F.3d at 175. But, if a plaintiff can show that he would have been hired regardless of whether the concealment was material, then the employer losses on this prong. *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (per curiam). "A triable issue of fact exists when it is unclear whether an employer's hiring decision would be affected by knowledge of a potential employee's previous injuries." *Hare v. Graham Gulf, Inc.*, 22 F. Supp. 3d 648, 654 (E.D. La. 2014).

Further, the Court finds *Luwisch v. American Marine Corporation* particularly on point. No. 17-3241, 2018 WL 3111931 (E.D. La. June 25, 2018). There, the plaintiff was hired even though he never completed the company's medical history questionnaire. *Id*. at *2. The court found this significant because:

> the Fifth Circuit often relies on the fact that an employer asked a specific question in determining whether a medical omission is material. However, this proposition assumes a connection between the specific medical question being asked and the employer's decision to hire. That is, when the employer asks a specific medical

question prior to hiring, the employer presumably bases the decision to hire on the applicant's answer. In this case, however, [the defendant] never received [the plaintiff's] answers to the health assessment, and so [the defendant] could not have relied on the answers to the assessment in hiring [the plaintiff.] To the contrary, if the answers to the health assessment were material to [the defendant's] hiring decision, presumably [the defendant] would have delayed [the plaintiff's] employment until the complete hiring packet was obtained. *Id*.

Almost the exact same scenario happened in this present case. Here, Taylor signed and dated the 2011 B&J Martin health questionnaire. (Rec. Doc. 54-3, 2011 B&J Martin's Questionnaire). However, and importantly, he failed to write either "Yes" or "No" in the boxes related to the first two questions which asked (1) whether Taylor "ever had an injury, disease, or medical problem with [his] . . . back . . ." and (2) whether Taylor "ever had or experienced . . . back pain[.]" *Id*. Just like in *Luwisch*, there is a genuine issue of material fact as to whether Taylor's prior health condition was material to B&J Martin's decision to hire Taylor. In other words, an important question remains: if the answers to this questionnaire were so important to B&J Martin, why was Taylor allowed to work before B&J Martin received all of the answers to its questionnaire? One would think B&J Martin would demand Taylor to complete every question if this questionnaire was so important to them. Lastly, the Court notes that a declaration by B&J Martin's Office Manger stating that "[a]ny prior back injuries would have significantly affected B&J Martin's decision to hire Taylor" is not enough for B&J Martin to satisfy its burden on this motion for partial summary judgment.[3]

---

[3] The Court notes that this type of declaration was not enough for the defendant in *Luwisch* to make a successful *McCorpen* defense either. 2018 WL 3111931, at *3 (E.D. La. June 25, 2018) ("[the defendant] has submitted no evidence, other than the declaration and deposition of its president, to prove [the plaintiff] would not have been hired if [the defendant] had known of his degenerative disc disease. For example, [the defendant] has not submitted its official human resources documentation explaining hiring practices with regard to applicants with pre-existing conditions, and [the defendant] has not presented deposition testimony of any medical professionals opining they would not have cleared [the plaintiff] for

Therefore, because a genuine issue of fact exists with respect to the materiality element of the *McCorpen* defense, B&J Martin is not entitled to a dismissal with respect to Taylor's claims for maintenance and cure.

### C. Whether Taylor is Entitled to Punitive Damages

Lastly, B&J Martin is entitled to partial summary judgment dismissing Taylor's claim for punitive damages for failure to pay maintenance and cure. Under *Atlantic Sounding Co. v. Townsend*, a seaman may seek punitive damages if his employer arbitrarily and willfully refuses to pay maintenance and cure. 557 U.S. 404 (2009). "To prove an employer's conduct was arbitrary and capricious, a seaman must do more than prove the employer's conduct was unreasonable." *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 383 (5th Cir. 2012). "Rather, it is only when the employer 'has exhibited callousness and indifference to the seaman's plight' that it becomes liable for attorney's fees. *Id*. "Our court has described this 'higher degree of fault' as 'egregiously at fault,' 'recalcitrant,' 'willful,' and 'persistent.'" *Id*.

Here, B&J Martin has paid for Taylor's maintenance and cure expenses from October 14, 2015 to May 23, 2019. (Rec. Doc. 54-8, April Foret's Declaration). These expenses have included payment for three surgeries, pain management, physical therapy, and other medical expenses. *Id*. Because B&J Martin has dutifully paid its maintenance and cure obligations, it is entitled to summary judgment relief dismissing Taylor's claim for punitive damages for maintenance and cure.

---

work if they had known of his condition. At the summary judgment stage, the employer has the burden of demonstrating a lack of disputed issues of material fact with respect to each of the three prongs of the *McCorpen* defense.").

## IV. Conclusion

Accordingly;

**IT IS ORDERED** that B&J Martin's **Motion for Partial Summary Judgment (Rec. Doc. 54)** is **GRANTED IN PART and DENIED IN PART** as follows. The motion is granted insofar as the Court finds that Taylor reached MMI on May 20, 2019, and the Court dismisses Taylor's claim for punitive damages relating to B&J Martin's obligation to Taylor's maintenance and cure. However, the motion is denied insofar as B&J Martin's request for summary judgment relief under the *McCorpen* defense for Taylor's claims for maintenance and cure.

New Orleans, Louisiana, this 27th day of September, 2019

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE